**Affirmed and Memorandum Opinion filed December 4, 2014.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-14-00626-CV

### IN THE INTEREST OF I.R., A MINOR CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2013-03847J**

## M E M O R A N D U M    O P I N I O N

Appellant S.B. (the Mother) appeals from the decree terminating her parental rights to I.R. (the Child).[1] The Mother raises five issues challenging the sufficiency of the evidence supporting the trial court's findings on the four predicate termination grounds recited in the judgment, and the court's finding that termination of the Mother's parental rights is in the Child's best interest. We affirm.

---

[1] To protect the identity of the minor, we have not used the names of the Child, parents, or other family members. *See* Tex. R. App. P. 9.8.

# I. BACKGROUND

On June 20, 2013, police investigating a shooting went to an apartment in search of a suspect. Upon entering the apartment, police found the Child, who was then about two years old, with four other young children. The apartment was described as being in "deplorable" condition—it was filled with bags of dirty diapers and the refrigerator contained moldy food. The police found a quarter pound of marijuana, small amounts of codeine and Xanax, a loaded 9 mm Smith & Wesson handgun, and 63 rounds of ammunition in the apartment. There were also open containers of beer and liquor in areas accessible to the children, and the apartment smelled of marijuana. The Child's parents were not at the apartment. The only adult present (the Aunt) was arrested for possession of marijuana. During the subsequent investigation, the adults residing in the apartment were not cooperative and denied knowledge of the drugs. It was determined the Child resided at the apartment with his father, I.R., Sr. (the Father). Investigators also determined S.B. was the Child's Mother. Another of the Father's children by a different mother (the Sister) was among the children found at the apartment and she was also taken into the Department's care.

On June 21, 2013, the Department filed a petition requesting emergency temporary custody of the Child, alleging neglectful supervision and physical neglect. That day, the court signed an order for emergency protection of the Child, granting the Department temporary managing conservatorship. Counsel was appointed to represent the Mother. The Mother had not been located at the time of the adversary hearing held July 2, 2014, but she was represented by counsel at the hearing. The Father was present at the hearing and testified he had no contact information for the Mother. The Father testified the Mother abandoned the Child, and he had been caring for the Child since the previous June. He stated that he and

the Child temporarily lived at the apartment where the Child was found. After the hearing, the court signed an order continuing the Department's temporary conservatorship. The court appointed an attorney ad litem for the Child, and the Child was placed in a foster home with the Sister.

The Mother was located shortly thereafter. On July 23, 2013, the Children's Crisis Care Center (4C's) performed a psychosocial evaluation of the Mother and filed its report with the court. The report recommended random drug testing, individual counseling, family counseling to encourage bonding with the Child due to his separation from the Mother, continued stable employment, continued safe and stable housing, and regular visits with the Child.

On August 15, 2013, the Department submitted its family service plan for the Mother. The plan required the Mother to demonstrate she could remain sober and drug free, participate in therapy, maintain a safe and stable home, maintain stable employment, and refrain from criminal activity. The Mother was formally served on August 27, 2013, and appeared in court that day with her attorney for a status hearing. The Mother testified the Father has been ordered to pay child support but he has not. She acknowledged she was aware the Father uses drugs and is a gang member. The Mother has a three year old daughter (the Daughter) by another father. At that time, she and the Daughter lived with her mother (the Grandmother). The Mother acknowledged that she had signed her family service plan and intended to comply with its terms. She testified she was employed at a daycare center and had completed her GED (General Educational Development Diploma). At the conclusion of the hearing, the court approved the Department's family service plan and ordered the Mother to comply with its terms.

Trial to the court was held June 19, 2014. The responding police officer testified about the conditions of the residence where the Child was found. Bruce

3

Jefferies of the National Screening Center testified about the Mother's drug test results. The Department's caseworker, the Child Advocates representative, the Mother, and the Grandmother also testified. At the conclusion of the trial, the court granted the Department's request for termination of the Mother's parental rights. On July 21, 2014, the trial court signed a final judgment reciting that the Mother's parental rights were terminated based on findings that termination is in the Child's best interest and that the Mother committed acts establishing the predicate termination grounds set out in subsections D, E, O, and P of Texas Family Code Section 161.001(1).[2] Tex. Fam. Code §§161.001(1)(D), (E), (O) & (P); 161.001(2). The Department was appointed sole managing conservator of the Child. The Mother filed a timely notice of appeal.

## II. BURDEN OF PROOF AND STANDARDS OF REVIEW

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of

---

[2] The Father's parental rights were also terminated, but he did not appeal.

the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Only one predicate finding under section 161.001 is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all of the evidence including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and we cannot substitute our own judgment

for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

## III. ANALYSIS

### A. Section 161.001(1)(O)

In her third issue, the Mother asserts the evidence is legally and factually insufficient to support the trial court's predicate termination finding under section 161.001(1)(O), which provides termination is warranted if the trial court finds by clear and convincing evidence that the parent has:

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

Tex. Fam. Code § 161.001(1)(O). The Mother has not challenged the portion of subsection O requiring that the Child be in the Department's managing conservatorship for at least nine months after he was removed from a parent due to abuse or neglect.

The record reflects that the court approved the Mother's service plan and ordered compliance with its terms. The court warned the Mother that her failure to do so could result in the termination of her parental rights. *See* Tex. Fam. Code §§ 263.101–.106; 161.001(1)(O). The Mother's family service plan was admitted in evidence at trial. The plan, which was incorporated in the trial court's order, required the Mother to complete the following tasks and services:

> Participate in random urinalysis drug testing as requested by the Department and test negative at all times;

6

Participate fully in drug and alcohol screening and follow all recommendations made by the assessment, including inpatient or outpatient drug treatment, individual, group and/or family therapy;

Develop a larger support system of family and friends and utilize community resources;

Maintain contact with the Child during scheduled visits;

Pay child support if ordered by the court and provide additional support in the form of clothes and gifts for the Child;

Refrain from engaging in criminal activities;

Fully participate in services, attend court hearings, permanency conferences, meetings and family visits, and maintain contact with the assigned caseworker;

Obtain and maintain legal and verifiable employment for six months and provide documentation in the form of payroll stubs;

Actively participate in parenting education classes, provide a certificate of completion, and demonstrate learned behaviors during family visits;

Obtain and maintain stable housing for more than six months that provides protection, food, shelter and is free of safety hazards for the Child, provide the Department with a copy of the lease agreement within 10 days of signing the plan, and cooperate with unannounced visits to her residence, allowing the Department access.

Complete a psychosocial evaluation and follow all recommendations, which may include a psychological evaluation, psychiatric evaluation, individual therapy, family therapy, and/or group therapy.

First, the record reflects that the Mother did not "test negative at all times" for illegal drugs during the pendency of these proceedings. The first witness at trial, Bruce Jeffries of the National Screening Center, testified about the records, admitted at trial, showing the results of the Mother's drug tests. He summarized the results from the August 27, 2013 drug test, stating the Mother was "clean." Three months later, the Mother's urinalysis was also clean, but the hair specimen collected on November 21, 2013, was positive for cocaine. On March 20, 2014, the

7

Mother had another positive result for cocaine on a hair test. Jeffries testified the inside of the hair follicle was positive for cocaine, and the outside of the hair was saturated with marijuana. Jeffries explained that these results showed the Mother used cocaine between Christmas and March 20, 2014, the date of the test. He further testified that these results confirm that the Mother used cocaine and marijuana on more than one occasion. Two months later, in May 2014, the Mother submitted to a urinalysis, and the test was clean. Subsequent testimony revealed that the Mother was pregnant with a child by an unidentified father when she tested positive for cocaine use. The Mother later testified that she never used cocaine, and she stated she was not participating in any programs related to drug use.

In addition, the evidence at trial shows the Mother did not complete many other tasks set out in her family service plan for reunification with the Child. The Department's caseworker Shamaila Khan testified the Mother missed visits with the Child for a three-month period. The Mother had attended her visits with the Child before December of 2013, but she missed visits from December to March before resuming her visits. The caseworker acknowledged that the Mother had explained that she thought she would not be permitted to visit after her positive drug tests.

Caseworker Khan testified that the Mother completed the 4C's psychosocial evaluation, but she failed to follow through with all of the 4C's recommendations. The Mother failed to complete the required individual counseling; the caseworker testified the Mother did not attend her individual counseling sessions in May 2014. After the second absence, the counseling provider, Advocates of the Vergie Reid Community Project, Inc., would not permit the Mother to reschedule and discharged her. The Mother acknowledged the missed appointments, but she explained that one appointment conflicted with her work hours. She stated she had

contacted the Department about the conflict, but the caseworker had not called her back. In addition, she claimed she lacked transportation for another missed appointment, but she had called ahead to notify the service provider. The Mother further stated she had an appointment "Tuesday," presumably of the week after trial, for therapy in the case concerning the Department's conservatorship of her other two children, the Daughter and her newborn son. The Mother provided records from her partially completed individual counseling sessions in October, November, December, and April. No explanation for the gap from January through March was provided, and the records also reflected the missed appointments in May.

The record evidence also shows that the Mother had not maintained regular employment and she failed to provide employment documentation to the Department before trial. Caseworker Khan testified that the Department learned the Mother's sworn testimony at the status hearing on August 27, 2013, that she was employed at a daycare center was not true. In its investigation to confirm the Mother's employment, the Department learned that the daycare owner was the Mother's aunt, who acknowledged the letter she provided to confirm the Mother's employment was not true and was written to help the Mother. The Mother testified at trial that she worked with the "Tax Farm" from February 2014, after she gave birth, through April. She provided evidence in the form of an April 2014 "paycheck stub" from "Bulox Dean LLC" showing she had earned $10,336 while working there. She stated she is currently employed with ABM Janitorial Services, and provided her first paycheck stub for the period of May 16 through May 31, 2014, showing she was paid $323.73. This evidence of employment and income was provided for the first time at trial. Moreover, the evidence did not establish stable employment for six months.

9

The Mother also produced at trial a certificate to show she had completed parenting classes, as required by her service plan. The Mother further testified she lived in an apartment with her Daughter and paid $600 in rent, but she did not have a copy of the lease. Photographs of the apartment were admitted at trial. The Mother acknowledged she had a year to complete the family service plan but she had not provided a copy of her lease to the Department, despite the plan's requirement that the lease be provided within ten days of signing the plan.

The Mother complains on appeal that intensive outpatient therapy was ordered late in the case. The Mother claims she was ordered to complete 18 to 30 weeks of intensive outpatient therapy in March of 2014, and it was impossible to complete this therapy in the time remaining before the June 19, 2014 trial. To support her claim, the Mother refers to the caseworker's testimony from the March 20, 2014 permanency hearing. In responding to questions regarding the Mother's compliance with her court-ordered services, caseworker Khan reported that the Department and service providers were unable to contact the Mother from January until March 2014 because the Mother's phone was disconnected. She stated there was a "lapse" in services for those two months. The caseworker then stated: "She has been referred now for substance abuse assessment, as well." The caseworker did not mention intensive outpatient therapy.

The Mother did not testify about the impossibility of performance of outpatient therapy at trial. She testified she had been trying to arrange outpatient therapy at the Santa Maria center to deal with her drug use. She stated she had called several times a day and did not receive a return call until she spoke to a supervisor. She testified she had an appointment at Santa Maria the Wednesday after trial. No documentary evidence was admitted at trial to show when intensive outpatient therapy was ordered; the caseworker simply testified that a drug

10

assessment was a requirement. In the Mother's motion for new trial, she stated her therapist recommended an 18-30 week outpatient program on March 24, 2014, but no records from any March therapy sessions are included in the records admitted at trial. We conclude the record does not support the Mother's claim. Moreover, the Family Code does not allow consideration of excuses for non-compliance with section 161.001(1)(O). *See In re M.C.G.*, 329 S.W.3d 674, 675–76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

The record evidence demonstrates that the Mother did not complete many court-ordered services and tasks, which provides a basis for termination of parental rights under subsection O. *See In re C.M.C.*, 273 S.W.3d at 875. Even substantial compliance with a family service plan is insufficient to avoid a termination finding under subsection O. *Id.*; *see also In re T.T.*, 228 S.W.3d 312, 319–20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (noting Texas courts have uniformly found substantial compliance with the provisions of a court order inadequate to avoid a termination finding under subsection O). Here, the Mother attempted to comply with parts of the court-ordered services, but she failed to follow these tasks through to completion. Sporadic incidents of partial compliance with a court-ordered family service plan do not alter the fact that the parent violated many material provisions of the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 278. By failing to complete her service plan, the Mother has not demonstrated an ability to provide the Child with a safe environment. *See In re A.D.*, 203 S.W.3d 407, 411–12 (Tex. App.—El Paso 2006, pet. denied) (affirming termination under subsection O because mother failed to meet her service plan's material requirements including drug assessment, finding a job, and providing a safe home).

In sum, under the applicable standards of review, the record evidence is legally and factually sufficient to support the finding that the Mother failed to

comply with the provisions of a court order specifically establishing the actions necessary for her to obtain the return of the Child after his removal due to abuse or neglect. Reviewing all the evidence in the light most favorable to the termination findings, we conclude that a reasonable fact finder could have formed a firm belief or conviction as to the truth of the termination findings under section 161.001(1)(O). In light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the termination finding under section 161.001(1)(O) is not so significant that a fact finder could not reasonably have formed a firm belief or conviction as to the truth of the termination finding under section 161.001(1)(O). *See In re H.R.M.*, 209 S.W.3d at 108. We overrule the Mother's third issue.

The Mother also has challenged the sufficiency of the evidence supporting the other predicate findings under subsections D, E, and P of section 161.001(1). Because a single predicate finding under section 161.001(1) of the Family Code is sufficient to support a judgment of termination when there is also a finding that termination is in the child's best interest, we need not address the Mother's first, second, and fourth issues. *See In re A.V.*, 113 S.W.3d at 362 (affirming termination decree based on one predicate without reaching second predicate found by fact finder and challenged by appellant); *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (affirming termination decree based on single predicate under section 161.001(1)).

## B. Best Interest

In her fifth issue, the Mother argues that the evidence is insufficient to support the finding that termination of her parental rights is in the best interest of the Child. We review the entire record in deciding a challenge to the court's best interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong

presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code § 263.307(a).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating parental rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533.

In addition, the Texas Family Code sets out factors to be considered in evaluating the parent's willingness and ability to provide the child with a safe environment, including: the child's age and physical and mental vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe

physical home environment, and an understanding of the child's needs and capabilities. Tex. Fam. Code § 263.307(b); *In re R.R.,* 209 S.W.3d at 116.

### *Danger to the Child, Including Parental Drug Use and Criminal Activity*

The record contains ample evidence supporting a finding that the Mother's conduct endangered the Child. The caseworker acknowledged that although the Mother was not the offending parent when the Child was taken into care, she left the Child with the Father knowing he was a serious drug user and a violent criminal. The Mother did not know the Child's whereabouts for at least seven to eight months. The Mother acknowledged that the Father had a history of drug use and he was charged with and pled guilty to possession of cocaine in January 2014. Records from the Father's guilty plea to possession of less than four grams of cocaine were admitted at trial, and other documents in evidence reflect the Father had "an extensive criminal history." The Father testified at the status hearing that he had completed probation for a theft charge. Although the Father had denied he was a gang member, the Mother testified she knew the Father was a member of a gang.

The Department first became involved with the Child because he was found in dangerous conditions. The apartment where the Child was found was both unsanitary and unsafe. There were drugs, a loaded handgun, and alcohol accessible to the Child and the other children found there. There was no food appropriate for the children in the apartment, and the food that was in the refrigerator was covered with mold.

In addition, the Mother tested positive for drugs during the pendency of the case while pregnant with another child. A parent's drug use supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). The factfinder can give "great weight" to

14

the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also In re J.N.H.*, No. 02–11–00075–CV, 2011 WL 5607614, at *8 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming a trial court's decision that termination was in the best interest of a child). A mother's use of drugs during pregnancy is considered endangering conduct to be evaluated in determining the best interest of a child. *See In re L.M.,* 104 S.W.3d 642, 648 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). While the Mother's drug test a month before trial was negative, the factfinder may determine that a parent's changes shortly before trial are too late to have an impact on the best interest determination. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied).

### Stability and Compliance with Services

We note that evidence supporting termination under one of the grounds listed in section 161.001(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(1) grounds and best interest). In determining the best interest of a child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the Child. *See In re E.C.R.*, 402 S.W.3d at 249 ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding."); *see also In re E.A.F.,* 424 S.W.3d 742*,* 752 (Tex. App.—Houston [14th Dist.] 2014, pet. filed).

The evidence of the Mother's failure to complete her services is recited above. The trial court evaluated the credibility of the Mother's reasons for non-compliance and we may not disturb the factfinder's credibility determinations.

Stability and permanence are paramount in the upbringing of children. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied). A parent's failure to show that she is stable enough to parent a child for any prolonged period entitles the trial court "to determine that this pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.).

The record reflects that Mother made efforts to comply with the tasks set out in the court-ordered services at the beginning of the case. Her compliance was only partial, however. The record contains evidence of the Mother's lapses, including positive drug tests and failing to keep in contact with the Department and service providers for a two-month period during the year these proceedings were pending. It appeared at trial that the Mother had recently attempted to establish housing and employment. The factfinder reasonably could have determined that the Mother's changes shortly before trial were too late to impact its best interest determination. *See In re Z.C.*, 280 S.W.3d at 476 (explaining that a father's "efforts to improve his ability to effectively parent on the eve of trial [were] not enough to overcome a decade of poor parenting and neglect" in evaluating the best interest of the children).

### *Child's Desires, Needs, and Proposed Placement*

The Child was very young at the time of trial and there is no evidence of his desires. When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them,

and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re J.N.R.,* 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d at 931. Therefore, evidence about the present and future placement of the Child is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28.

The Department's caseworker Khan testified that the Child was placed in an adoptive foster home with the Sister. The Child was doing well; the home was safe and stable and meeting his physical and emotional needs. The Child had been severely developmentally delayed at the beginning of the case, but after referral to an educational program, the Child had substantially improved.

The Child Advocates representative testified the Child was very bonded to the foster parents and the other children in the home. He called the parents "mother" and "father." In her opinion, the Child should remain in the foster home to continue the progress he had made while there. She recommended termination of parental rights. She confirmed that the foster parents are interested in adopting both the Child and his Sister.

### *Parenting Abilities and Family Support*

We may also consider the Mother's past performance as a parent in evaluating her fitness to provide for the Child and the trial court's determination that termination of her parental rights would be in the Child's best interest. *See In re C.H.*, 89 S.W.3d at 28. Although evidence of past misconduct or neglect alone

17

may not be sufficient to show present unfitness, a fact finder may measure a parent's future conduct by her past conduct and determine that it is in a child's best interest to terminate her parental rights. *See In re A.N.D.,* No. 02-12-00394-CV, 2013 WL 362753, at *2 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op.).

The Mother acknowledged she left the Child with the Father, who she knew to be a drug user, violent criminal, and gang member. She had not seen the Child for seven months to a year before the Department obtained conservatorship. Although she claimed she intended only to leave the Child for a visit, the Father asserted the Mother abandoned the Child with him. The Mother's testimony about her efforts to locate the Child and have him returned to her was inconsistent and somewhat vague. The Mother stated she reported the Father to the police when he failed to return the Child after a visit. The Mother testified she told a police officer that the Child's Father was named on the birth certificate. The officer informed her that because the Father was named, there was nothing that could be done to return the Child to her. The Child's birth certificate had been admitted in evidence at the beginning of the trial and no father was named, however. The Mother also testified the police checked the internet and directed her downtown "somewhere around the corner." She testified "they" asked her for $99 and told her it would take up to six months for a court date. About that time, she said the Father called to tell her the Child had been taken into the Department's care. On cross-examination, the Mother claimed the police failed to give her a report of her complaint. When asked whether she had contacted CPS (Children's Protective Services) to report the Father's actions, the Mother testified she notified CPS about "his breathing. And they put him — she was on the computer or whatever."

It was within the trial court's discretion to determine the weight and

credibility of the Mother's testimony. *In re K.A.S.*, 131 S.W.3d 215, 229–30 (Tex. App.—Fort Worth 2004, pet. denied). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re H.R.M.*, 209 S.W.3d at 108. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

To show she was an attentive parent, the Mother testified she was the person who first noticed the Child has palsy on one side of his face. The Mother provided evidence she had completed eight weeks of parenting classes. There is very little other evidence about the Mother's parenting abilities. We note however, that the Mother no longer has custody of her other children, her Daughter and her newborn son by an unnamed father. The record reflects that in April 2014, after the Mother's positive drug tests, both of the Mother's other children were taken into the Department's care.

There is limited evidence in our record that the Mother has family support. The Grandmother testified briefly that she would be available to help her daughter if the Child were returned to the Mother. The Department had determined that the Mother's father, the Grandfather, was unable to provide adequate care for the Child. The Child had been placed with the Grandfather for about a month, but the caseworker testified the Child was removed due to the Grandfather's medical neglect. After being informed of the Child's diagnosis of palsy on one side of his face, the Grandfather failed to take the Child to his follow-up examination and he did not purchase the medication needed for the Child's eye.

In sum, the record contains evidence supporting the best interest finding based on the Mother's drug use, history of neglect and endangering conduct, lack of stable employment, and failure to comply with court-ordered services. *See In re*

*S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with his family service plan in holding the evidence supported the best interest finding). Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights is in the Child's best interest. *See J.F.C.*, 96 S.W.3d at 265–66. In light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the best interest finding is not so significant that a fact finder could not reasonably have formed a firm belief or conviction that termination of the Mother's parental rights is in the Child's best interest. *See In re H.R.M.*, 209 S.W.3d at 108. Therefore, after considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in the Child's best interest. *See* Tex. Fam. Code § 161.001(2). We overrule the Mother's fifth issue.

## IV. CONCLUSION

We have determined that legally and factually sufficient evidence supports the trial court's findings of the predicate ground under section 161.001)(1)(O) and that termination of the Mother's parental rights is in the best interest of the Child. Therefore, the trial court's judgment is affirmed.


/s/     William J. Boyce
        Justice


Panel consists of Justices Boyce, Jamison, and Donovan.

20